[Civ. No. 36895. First Dist., Div. One. Sept. 15, 1975.]

LARRY DONALD JEFFERSON, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

722

COUNSEL

James C. Hooley, Public Defender, and Gary N. Wood, Assistant Public Defender, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and William M. Baldwin, Deputy Attorneys General, for Real Party in Interest.

## OPINION

THE COURT.*—An alternative writ of prohibition was issued in this case to review an order of the trial court which denied the petitioner's

---

*Before Molinari, P. J., Sims, J., and Elkington, J.

motion to dismiss an information charging him with receiving stolen property in violation of section 496 of the Penal Code. (See Pen. Code, §§ 995 and 999a.) At the combined preliminary examination and hearing on petitioner's motion to suppress evidence it was stipulated that a $20 traveler's check had been countersigned by the owner and taken from him at gunpoint on February 10, 1975. On February 13, 1975, when the petitioner was instructed to remove the contents from his pockets, following his arrest for violation of section 415 of the Penal Code, he removed the same check from a pocket in the inside pair of the two pair of pants he was wearing. Petitioner contended and contends that there was no probable cause for his arrest, and that the evidence discovered and seized as a result of that arrest should have been suppressed.

At about 11 p.m. on February 13, 1975, the arresting officer was escorting a young lady from the court section of the building housing the Municipal Court for the Oakland-Piedmont Judicial District, to room 200, the office of the homicide detail of the police department, for an interview. The officer was accompanied by his partner, a fellow officer. In the immediate vicinity of the doorway to the office there were present two unidentified women in the hallway, a female secretary from the homicide/robbery detail, and a number of people assigned and on duty in the office. The petitioner was apparently a friend of the young lady under escort, to whom she entrusted her purse, and he was attempting to follow her. As the officers and their prospective interviewee were just about to enter the office, the arresting officer was standing practically alongside the petitioner in the hallway.

He heard the petitioner refer to some persons as "mother-fuckers" a couple of times in a rather loud voice. The officer did not know to whom the petitioner's remarks were addressed, nor does his testimony identify the persons who were so characterized by the petitioner. The officer acknowledged that the remarks might have been addressed to petitioner's companion. No one reacted to petitioner's remarks other than the officer. He approached petitioner and took him into custody for what he first testified was "the use of profanity" and subsequently elaborated to disturbing the peace in violation of section 415 of the Penal Code. The officer testified that he intended to book and not merely cite the petitioner because of suspicion he was under the influence of narcotics.

From observing petitioner's mannerisms and speech, the officer was under the impression that the petitioner was under the influence of

something, and not smelling any alcohol, he attributed what he observed to the influence of narcotics. The officer did not conduct any tests to determine the sobriety of the petitioner, nor did he arrest him at any time for being under the influence of drugs.

After the discovery of the traveler's check, the petitioner was ultimately booked for receiving stolen property in violation of section 496 of the Penal Code.

The arrest was acknowledgedly made under the provisions of subdivision (a)(3) of section 415 of the Penal Code,[1] which subjects to punishment, "Any person who uses offensive words in a public place which are inherently likely to produce a violent reaction." In support of the arrest the Attorney General points out that the statute is constitutional because it applies to "fighting words." (See *Chaplinsky* v. *New Hampshire* (1942) 315 U.S. 568, 572-574 [86 L.Ed. 1031, 1035-1037, 62 S.Ct. 766]; *Gooding* v. *Wilson* (1972) 405 U.S. 518, 522-523 [31 L.Ed.2d 408, 414-415, 92 S.Ct. 1103]; *In re Brown* (1973) 9 Cal.3d 612, 617-618 [108 Cal.Rptr. 465, 510 P.2d 1017]; and *In re Bushman* (1970) 1 Cal.3d 767, 773 [83 Cal.Rptr. 375, 463 P.2d 727].) He then concludes that the utterance was inherently likely to produce a violent reaction, because, in the words of the magistrate in this case, "You call somebody a mother fucker the guy's likely to punch you in the nose."

■ The foregoing analysis is an oversimplification. *Cohen* v. *California* (1971) 403 U.S. 15 [29 L.Ed.2d 284, 91 S.Ct. 1780] established that the mere use of a vulgar, profane, indecorous, scurrilous, opprobrious epithet cannot alone be grounds for prosecution (see 403 U.S. at pp. 20 and 25-26 [29 L.Ed.2d at pp. 291 and 293-295]). This was recognized in *In re Brown, supra,* where the court stated, ". . . the portion of the [former] statute dealing with 'offensive' conduct could not validly be applied to speech or conduct which merely had a tendency to provoke others to violence and that the proscription was valid only where there was a clear and present danger that violence will imminently erupt." (9 Cal.3d at p. 618.)

[1]Section 415 of the Penal Code provides: "(a) Any of the following persons shall be punished by imprisonment in the county jail for a period of not more than 90 days, a fine of not more than two hundred dollars ($200), or both such imprisonment and fine: [¶] (1) Any person who unlawfully fights in a public place or challenges another person in a public place to fight. [¶] (2) Any person who maliciously and willfully disturbs another person by loud and unreasonable noise. [¶] (3) Any person who uses offensive words in a public place which are inherently likely to produce a violent reaction."

From the constitutional precedents we deduce that it is not enough that the auditor violently react to the words in the abstract because he does not approve of profanity. The context in which the words are used must be considered, and there must be a showing that the words were uttered in a provocative manner, so that there was a clear and present danger violence would erupt. ██ In this case the testimony of the officer fails to show that the epithet or expletive mouthed by the petitioner was directed at anyone. From all that appears he used them in ordinary conversation with his companion to emphasize some views which the record fails to disclose. It is unnecessary to determine whether officers as such must suffer abasement when a reasonable man would be incited to a violent reaction. (Cf. *Lewis* v. *City of New Orleans* (1972) 408 U.S. 913 [33 L.Ed.2d 321, 92 S.Ct. 2499], Powell, J. concurring.) There is no evidence that the epithet was directed at the arresting officer, or at anyone else in the hallway, or in the office. Under those circumstances it would be unconstitutional to apply the statute to the petitioner. (See *Rosenfeld* v. *New Jersey* (1972) 408 U.S. 901 [33 L.Ed.2d 321, 92 S.Ct. 2479]; *State* v. *Rosenfeld* (1972) 120 N.J.Super. 458 [295 A.2d 1]; *State* v. *Rosenfeld* (1973) 62 N.J. 594 [303 A.2d 889]; and *Brown* v. *Oklahoma* (1972) 408 U.S. 914 [33 L.Ed.2d 326, 92 S.Ct. 2507]; and *Brown* v. *State* (Okl.Cr. 1972) 503 P.2d 571. Cf. Dissents Burger, C. J., Powell, J., Rehnquist, J., *Rosenfeld* v. *New Jersey, supra,* 408 U.S. at pp. 902, 903 and 909 [33 L.Ed.2d at pp. 324, 322 and 325]; and *Brown* v. *State* (Okl.Cr. 1971) 492 P.2d 1106.)

Since the record fails to show probable cause for petitioner's arrest under the disturbing the peace statute as it must be constitutionally construed, his arrest was invalid, and the magistrate and trial court erred in failing to suppress the evidence secured as a result of that arrest. (*People* v. *Wohlleben* (1968) 261 Cal.App.2d 461, 462 [67 Cal.Rptr. 826].)

Let a peremptory writ of prohibition issue restraining respondent court from further proceedings under the information filed against petitioner, other than to dismiss the charges.